## THE STATE *ex rel.* HATHAWAY v. THE STATE BOARD OF HEALTH.

### DIVISION ONE.

1. **Mandamus:** ALTERNATIVE WRIT. The alternative writ is regarded as the first pleading, under our practice, in *mandamus* proceedings.

2. —— : ——. Such writ should set forth all the matters stated in the petition so that the respondent may be informed of the grounds on which the relief is asked.

3. —— : —— : RETURN. Where the return to an alternative writ of *mandamus*, though containing no specific denial in terms of the matters in the petition and writ, contains allegations in an affirmative form which in effect deny all the matters of substance alleged by the relator, such return will be regarded as sufficient.

4. —— : OFFICIAL ACTS. *Mandamus* will not lie to review official acts which require exercise of judgment and discretion.

5. —— : —— : STATE BOARD OF HEALTH. It will not lie to compel the State Board of Health to issue a certificate to a physician to whom it has refused such certificate because of unprofessional and dishonorable conduct. ( R. S. 1889, sec. 6878.)

The State ex rel. Hathaway v. The State Bd. of Health.

6. ——— : ——— : ———. If, however, the State Board of Health should exercise its power of refusal with manifest injustice, *mandamus* would lie to control its abuse of discretion.

## *Mandamus.*

PEREMPTORY WRIT DENIED.

*H. S. Kelley* for relator.

(1) The supreme court will grant the writ of *mandamus* under proper circumstances (*State v. Register*, 48 Mo. 56 ; *State ex rel. v. Railroad*, 77 Mo. 143 ), and hear and determine the same, although it would have appellate jurisdiction in the same cause. *State v. Tracy*, 94 Mo. 217 ; *State v. Weaks*, 93 Mo. 499 ; *State v. McGrath*, 92 Mo. 355 ; *State ex rel. v. Phillips*, 97 Mo. 331 ; *State v. Gregory*, 83 Mo. 123. When the relator has a clear legal right to the performance of a particular act or duty, and the law affords him no other adequate remedy to secure the performance of such duty or the enforcement of such right, *mandamus* is the proper remedy. High on Ex. Leg. Rem., sec. 10 ; *State ex rel. v. Francis*, 95 Mo. 44 ; *State ex rel. v. McGrath*, 92 Mo. 357 ; *Sheridan v. Fleming*, 93 Mo. 324. (2) It is clear enough that the relator has no other adequate legal remedy to obtain the right he claims, or to enforce the duty demanded of defendants as a board of health. (3) *Mandamus* will require a judicial officer to proceed to do his duty without directing what the judicial action shall be in the exercise of its judgment or discretion. *Treaner v. Porter*, 45 Mo. 336 ; *Millet v. Field*, 37 Mo. App. 83 ; *State v. Engelman*, 86 Mo. 551 ; *Strahan v. Audrain County*, 65 Mo. 644. But where the judicial act is enjoined by law, and no discretion is involved, the proper judgment will be directed. *State v. Snyder*, 98 Mo. 555. (4) As to ministerial acts, *mandamus* is the appropriate remedy to not only compel the performance of a particular

ministerial act by a ministerial officer, but the court will settle the legal principles applicable to the case, ascertain the specific legal duties of such officer before issuing the writ, and then indicate what that specific duty is and how it shall be performed. *State v. Williams,* 95 Mo. 159; *Public Schools v. Tracy,* 94 Mo. 217; *State v. Cramer,* 96 Mo. 75; *State v. Garesche,* 65 Mo. 480. (5) It has been held that the power to accept or reject an application for a license is not a judicial one, although it may involve some exercise of discretion, and if the diploma and affidavit require the grant of a license it is not possible to regard the duty as a judicial one. *Elmore v. Overton,* 104 Ind. 548; *Flourney v. City,* 17 Ind. 169; *Betts v. Dimon,* 3 Conn. 106; 40 Wis. 188; *State v. State Board,* 6 S. E. Rep. 824–9; *Wilkins v. State,* 16 N. E. Rep. 162. (6) It is the settled law in this state that *mandamus* will lie to compel the granting of a dramshop license. *Bean v. County Court,* 33 Mo. App. 635; *State v. County Court,* 80 Mo: 601–609; *State v. Ruark,* 34 Mo. App. 325. And whether a valid election was held or not may be tried in a proceeding by *mandamus.* *State v. Commissioners,* 35 Kan. 640; McCrary on Elec., sec. 366; 30 Mo. App. 612. (7) And if the board refuse to grant a certificate from caprice or selfish motives, the courts will interfere by *mandamus.* *Examiners v. People,* 13 N. E. Rep. 201; Tap. on Mand. 19, 66; Wood on Mand. 64; *Village v. People,* 78 Ill. 382; *People v. Parry,* 13 Barb. 206.; *Arberry v. Beavers,* 6 Tex. 457; *Com. v. Lynch,* 2 McCord, 170.

BLACK, J.—This is a proceeding commenced in this court by *mandamus* to compel the respondents who constitute the State Board of Health to issue to Dr. Hathaway, the relator, a certificate to practice medicine in this state.

1. The first question is one of pleading. The petition for the writ, after alleging that the relator was a graduate of a medical college, in good standing, and that

he presented to the respondents his diploma and the respondents found the diploma to be genuine, and the college in good standing, proceeds to state in substance, that the respondents refused to issue to him a certificate "upon the alleged and only ground that relator's method of advertising himself as a specialist in the treatment of private, blood and skin diseases was dishonorable and unprofessional, and that by such advertising he was guilty of unprofessional and dishonorable conduct, but relator denies that he has been guilty of any unprofessional or dishonorable conduct in and by such advertising or in any other manner, and relator charges the truth to be that said defendants, as such board, have knowingly issued certificates to divers physicians and surgeons who are, and claim to be, specialists and advertise as such in the same manner as relator," and that the board, "in refusing to grant to him a certificate, were and are actuated, governed and controlled by prejudice, bias caprice and partiality, and wantonly refuse to issue such certificate to relator," etc. These statements concerning the reason why the board refused to issue a certificate, and bias and prejudice on the part of the board, were not set forth or recited in the alternative writ.

To the writ the secretary of the board, for want of means to engage counsel it seems, made return. This return concedes that the relator had and held a diploma from a medical institution in good standing, and it goes on to state that the relator was heard in person, and by counsel, and on the eleventh of July, 1889, the board refused him a certificate because he was found guilty on charges duly preferred of unprofessional and dishonorable conduct in the habitual publication of advertisements, which in the opinion of the board tended, and were designed, to mislead and deceive the public and impose upon sick and credulous persons by impossible claims of the treatment of diseases, and for the further reason that he was then engaged in the practice of medicine without a certificate, and in defiance of the law. The

return further states that the respondents, "in their further endeavor to faithfully and impartially discharge their sworn duty under the law," were guided by the ruling of this court in the *Granville case*, 83 Mo. 123.

To this return the relator made answer in which he set up, among other things, the matters stated in the petition, and which were not recited in the alternative writ. The respondents filed no reply to this answer and the claim is now made that those matters stated in the answer stand admitted, and that a peremptory writ should be issued on the face of the pleadings.

The statute, it is true, provides in substance that the respondent shall make return to the alternative writ; that the relator must plead to or traverse the return; and that the respondent shall then reply, take issue or demur. Still the alternative writ is, in our practice, the first pleading, and it takes the place of a petition in an ordinary common-law action. *Hambleton v. Town of Dexter*, 89 Mo. 190 ; High on Ex. Leg. Rem., sec. 537. The writ should set forth all the matters stated in the petition, so that the respondent will be informed of the grounds upon which the relief is asked. *State ex rel. v. Everett*, 52 Mo. 94 ; High on Ex. Leg. Rem., sec. 538. In view of the fact that the pleadings are informal on both sides, and of the further fact, that the return was evidently made in view of the matters stated in the petition, we are of the opinion no undue advantage should be awarded the relator because he has set up matters in his answer which were stated in the petition and should have been recited in the writ.

When we look to the relator's pleadings, taken all in all, we find that he asserts in substance that the board denied him a certificate because he advertised his business in a manner which the board found to be unprofessional and dishonorable, when he was guilty of no such conduct, and that the board in refusing him a certificate acted from prejudice, bias and partiality. On the other

hand the respondents say they refused him a certificate because he was found guilty of dishonorable and unprofessional conduct in his method of advertising and because he persisted in violating the law by practicing medicine without a certificate, and that in refusing the certificate they endeavored faithfully and impartially to discharge their duties, guided by the former ruling of this court. While the return contains no specific denial in terms of the matters stated in the petition and writ, still the matters thus stated in an affirmative form in the return do deny all the matters of substance alleged by the relator, and this form of a denial must be held to be sufficient (*Jordan v. Buschmeyer*, 97 Mo. 97), and especially so when, as here, there has been no effort to bring the pleadings to a formal presentation of the issues.

2. The facts bearing upon the merits of this case as gathered from the pleadings and exhibits before us are these: Hathaway and Dr. Boyd began the practice of medicine in this state as specialists without having first procured certificates under the statute concerning the practice of medicine and surgery. We infer from what is said that prosecutions had been commenced against them, or complaints lodged before the board of health. Under these circumstances they applied to the board for certificates. They presented in due form genuine diplomas issued by medical institutions in good standing; but the board after hearing them in person and by counsel made the following order on the eleventh of July, 1889 : "After due deliberation and upon full consideration of the matter, the board by unanimous vote refused certificates to * * * James N. Hathaway, for unprofessional or dishonorable conduct, consisting in the publication by them of advertisements in the public press of St. Joseph, Missouri, during the present year, said advertisements in the opinion of the board being of a character that tended to mislead and deceive the public, to wrongfully impose on the fears, weakness or

ignorance of the sick or credulous, and to defraud the people by false and impossible claims in regard to the treatment of disease.''

Hathaway again appeared before the board in person and by attorney on the twenty-first of January, 1890, when the board made this order: ''After due consideration of the matter, the board by unanimous vote declined to accede to the request and refused a certificate to Hathaway, for unprofessional or dishonorable conduct.''

Between the dates upon which the foregoing orders were made, Boyd modified his advertisement so as to meet the approval of the board, and a certificate was issued to him ; but the modified advertisement presented by the relator was not satisfactory to the board. The answer of the relator gives a copy of these modified advertisements, but the record does not contain a copy of the advertisements upon which the board made its first ruling.

By section 6878, Revised Statutes, 1889, it is enacted that: ''The State Board of Health may refuse certificates to individuals guilty of unprofessional or dishonorable conduct, and they may revoke certificates for like causes, after giving the accused an opportunity to be heard in his defense before the board.''

This section of the statute imposes upon the board duties which are *quasi*-judicial in their character. The question whether the applicant is guilty of unprofessional or dishonorable conduct calls for the exercise of judgment and sound discretion. It is a question as to which the board must hear the evidence and pronounce a conclusion. The principle of law is well settled that *mandamus* will not lie to review official acts which require the exercise of judgment and discretion. *Mandamus* may be awarded for the purpose of requiring such officers to proceed and act upon such matters, but does not lie to direct or control the conclusion to be

reached.   The respondents heard the relator's applica-
tion and decided that he was not entitled to a certificate,
because guilty of unprofessional and dishonorable con-
duct, and that decision cannot be brought here for
review by this proceeding.   The case of *State ex rel.
Granville v. Gregory*, 83 Mo. 123, is in point and disposes
of the question in hand.   Other courts have expressed
the same views under statutes quite like our own.
*State ex rel. v. State Medical Examining Board*, 32
Minn. 324; *People v. Dental Examiners*, 110 Ill. 180.
See also *Allbutt v. General Council of Medical Educa-
tion and Registration*, 23 Law Rep. 400, Queen's
Bench Div.

There are some limitations upon the rule just stated ;
for, if the board of health should exercise its powers
with manifest injustice, then the courts may, and will,
control the abuse of authority by the writ of *manda-
mus.   Illinois State Board of Dental Examiners v.
People*, 13 N. E. Rep. 201.   As the legislature has not
defined what is "unprofessional or dishonorable con-
duct," those words must be understood to mean such
conduct as would in common judgment be deemed
unprofessional or dishonorable.   In determining whether
a party is guilty of such conduct there is a broad field
for the exercise of judgment and discretion by the
board, and within which the finding of the board is
conclusive.   The board of health has no right to pre-
scribe a code of medical ethics, and then declare a
breach of that code unprofessional and dishonorable
conduct; nor has it the right or power to deny to
physicians the right to advertise their profession in the
public press.   The respondents make no claims of any
right to do either of these things.   Their claim is that
advertisements which tend to mislead and deceive the
public constitute unprofessional and dishonorable con-
duct, and in this they are within the purview of the
law.   If, however, a physician will, in his advertise-
ments, throw out inducements to patients to submit to

treatment, then the matter is within the exclusive juris-diction of the board. We are not furnished with a copy of the advertisements upon which the board made its first ruling. The burden, however, is upon the relator to show that the ruling of the board is man-ifestly unjust.

The proof offered to show prejudice and bias on the part of the board is the fact that a certificate was finally issued to Boyd but refused to relator. Boyd modified his advertisement so as to avoid the objection-able features and meet the views of the board, but this the relator did not do. We see no evidence of prejudice on the part of the board. Indeed, it must be remem-bered that the relator came to this state and began the practice of medicine without any certificate. So long as he thus knowingly bid defiance to the law he was not entitled to one. The board of health is charged with the performance of important discretionary duties, and the performance of their duties will not be hampered by *mandamus* until a case of manifest injustice is shown. The relator has not made out such a case. Peremptory writ denied. All concur.