STATE OF MISSOURI ex rel. MICHAEL FOERSTEL et al., Appellants, v. CHARLES P. HIGGINS et al., Respondents.

St. Louis Court of Appeals, November 1, 1898.

1. **Primary Election Laws**: ELECTION COMMISSIONERS. Election commissioners acting under the primary election laws are bound to determine for themselves which of the committees was the controlling one for the twelfth district before they could give notice of a primary election as the request of either.

2. **Election Commissioners**: MANDAMUS. To determine which was the controlling committee it was necessary that the election commissioners should "consider before acting and search and inquire before reaching or announcing a conclusion" and if they performed this duty in this manner, acted honestly and faithfully, the act can not be controlled by mandamus.

3. ———: ———. A willful abuse of discretion by refusing to act as required by law, in a case where the facts essential to relators rights "are undisputed or stand confessed by the pleadings," will be controlled by mandamus.

*Appeal from the St. Louis City Circuit Court.*—HON. THOMAS A. RUSSELL, Judge.

REVERSED.

BENJ. J. KLENE and ADIEL SHERWOOD for appellant.

On the face of the pleadings, the motion to quash being treated as it should be, as in effect a demurrer, all matters well pleaded by relators must be taken as confessed for the purposes of this appeal. 14 Am. and Eng. Ency. Law, 233, note 8; State ex rel. v. Smith, 104 Mo. 661; State ex rel. v. Neville, 110 Mo. 345. On the face of the pleadings, thus understood, relators have made out a clear case for mandatory relief. People v. District Court, 18 Colo. 26; Shields v. Jacob,

88 Mich. 164. The board of election commissioners has no authority to determine between two contending factions of a political party, which is regular, but will file papers of each when in due form. State v. Allen, 43 Neb. 651; Phelps v. Piper, 48 Neb. 724; People v. District Court, 18 Colo. 26; Shields v. Jacobs, 88 Mich. 164; O'Malley v. Lesueur, 103 Mo. 253. And this is so because it is in harmony with the rule which requires the courts, in case of doubt, to adopt that rule which affords the citizen the greater liberty in casting his ballot. Phelps v. Piper, 48 Neb. 724; People v. District Court, 18 Colo. 26. The notification of relators' committee being sufficiently formal in all respects, the board of election commissioners had no discretion in the matter. They were bound, upon receipt of notification, to publish the call as required by law, for holding a primary. O'Malley v. Lesueur, 103 Mo. 253; Laws 1893, page 165, sec. 4798c; People v. District Court, 18 Colo. 26; Shields v. Jacob, 88 Mich. 164. Having ascertained that the notification from relators' committee was in due form, as it is, the duty of the board thereafter involved the exercise of no discretion, and was simply ministerial and formal; and having failed to act, the court will compel them by mandamus. Railroad v. Whitesides, 30 S. C. 579; People v. District Court, 18 Colo. 26-32. The act required of the board is one which the law specifically enjoins; this act it has actually refused to perform. These two conditions are all that relators are required to show, to entitle them to relief prayed. 14 Am. and Eng. Ency. Law, p. 105, note 3; People v. District Court, 18 Colo. 26. Having shown these facts the error of the trial court is apparent. Error was committed in quashing the alternative writ, and in not issuing a peremptory writ.

B. SCHNURMACHER and C. CLAFLIN ALLEN for respondents.

The peremptory writ of mandamus can not now be issued, even if it could have been lawfully issued at the time the proceedings herein were instituted in the circuit court. The case is dead. (a) The time for the election for which relators sought to nominate a candidate for congress is past, and the term of office of the congressman elected in 1896 has almost expired. There is no vacancy to be filled, and if there were one, it could not be filled except upon a writ of election, specially issued by the governor. U. S. Cons., art. I, sec. 2; R. S. 1889, sec. 4658. (b) The command of the alternative writ is to call a primary election in the twelfth congressional district of Missouri, to be held on the fifth of October, 1896, to elect delegates to a convention to be held on the succeeding day. For this court to issue a peremptory mandamus, following the language of the alternative writ, would be an absurdity. Such a writ would command an impossibility. Yet it has no power to issue any writ, or to order any writ issued, that does not conform to the alternative writ: "It is a well settled principle that the peremtory writ must conform strictly to the alternative mandamus, being necessarily limited as to form by the terms of the alternative writ. In other words, the courts are powerless to award the peremptory writ of mandamus in any other form than that fixed by the alternative writ." State ex rel. v. Railroad, 77 Mo. 143 (1882, L. C. 147), quoting High on Extraordinary Remedies, sec. 9; School District v. Lauderbaugh, 80 Mo. 190 (1883, L. C. 194); State ex rel. v. Baggott, 96 Mo. 63 (1888, L. C. 71); State ex rel. v. Davis, 54 Mo. App. 447 (1893, L. C. 450); State ex rel. v. Joplin Water Works, 52 Mo.

App. 312 (1892, L. C. 318). (c) The St. Louis court of appeals will not sit as a moot court. State ex rel. v. Westport, 135 Mo. 120 (1896), L. C. 133; Bartemeyer v. Iowa, 18 Wall. (U. S.) 139 (1874); California v. Railroad, 149 U. S. 308 (1893). "Since this writ is only issued in furtherance of justice, those who seek its assistance must satisfy the court that their application is *bona fide*, and for a proper purpose. It will be refused when the action is collusive and fictitious, when the cause is brought to obtain the opinion of the court on points of law, to determine a fanciful question, for curiosity, or a mere matter of taste." Merrill on Mandamus, sec. 68, citing State v. St. L. P. M. Co., 21 Mo. App. 526; Q. v. Blackwell R. R., 9 D. P. C., 538; People v. Masonic B. Ass'n, 98 Ill. 635; R. v. Staffordshire, 6 A. and E., 101. The pleadings on the part of the respondents are in proper form and condition. The objection sought to be made by relators in their statement that the answer or rejoinder to relators' reply has no place under the rules of pleading, is not well taken in view of the express provision of the statute which makes that pleading proper. R. S. Mo. 1889, sec. 6813; State ex rel. White v. Lockett, 54 Mo. App. 202 (1893, L. C. 205). The motion to quash the alternative writ was properly sustained, because on the face of the pleadings it appeared that the respondents had and exercised a discretion vested in them by law. Mandamus will not lie to review official acts which require the exercise of judgment and discretion. "And whenever an element, shred or degree of discretion enters into the duty to be performed, the functions of mandatory authority are shorn of their customary potency, and become powerless to dictate the terms of that discretion." State ex rel. Granville v. Gregory, 83 Mo. 123 (1884, L. C. 136); State ex rel. Patterson v. Marshall, 82 Mo. 484 (1884, L. C. 487); State ex rel.

Smith v. County Court, 83 Mo. 539 (1884, L. C. 540);
State ex rel. v. McGrath, 91 Mo. 386 (1886, L. C. 394).
And before the relators could be entitled to a writ of
mandamus, they must show that they have a clear legal
right to the specific service which they seek to obtain
from the respondents. State ex rel. Doud v. Lesueur,
136 Mo. 452. The election commissioners of Kansas
City and St. Louis are vested with a peculiar discre-
tion. * * * Laws of Mo. 1895 (extra session), page
5 *et seq.* As to primary elections, see Laws of Mo.
1891, page 136. Laws of Missouri 1893, page 165.

BLAND, J.—It is admitted by the pleadings in this
case that D. A. Pareira and others, claiming to be the
regularly constituted executive committee of the re-
publican party for the twelfth congressional district, on
the first day of May, 1896, caused to be served upon
the respondents, who then composed the Board of Elec-
tion Commissioners for the city of St. Louis, the fol-
lowing notice:

"HEADQUARTERS OF THE TWELFTH DISTRICT REPUB-
LICAN CONGRESSIONAL COMMITTEE,

"ST. LOUIS, April 20, 1896.
*"Board of Election Commissioners:*

"GENTLEMEN:—This is to notify you that at a meet-
ing of the Twelfth District Republican Congressional
Committee, held on the twentieth day of April, 1896,
it was resolved that a primary election be held in the
said Twelfth Congressional District, on the fifteenth
day of May, 1896, for the election of delegates to a con-
vention to be held at Addington Hall, Seventeenth and
Olive streets, St. Louis, Missouri, on the sixteenth day
of May, 1896, for the purpose of electing two delegates
and two alternate delegates for the said district to the
St. Louis Convention, to be held on the sixteenth day
of June, 1896, the nomination of a Congressman, the

naming of a Presidential Elector, and the election of a new Congressional Committee. The basis of representation to the said convention adopted by this Committee is one delegate for each 150 votes and fraction over seventy-five votes cast for Presidential Electors at the election in the year 1892.

"Very Respectfully,

"C. D. COMFORT,          "D. A. PAREIRA,
      "Secretary.                    "Chairman."

That pursuant to this notice the respondents caused notice to be printed in conformity to the requirements of the primary election laws, applicable to the city of St. Louis, that a primary election would be held in the twelfth congressional district on May 15, 1896, for the purpose of electing delegates to a convention to convene on the day following, for the purpose of nominating a candidate of the republican party to represent the said twelfth district in the lower house of the congress of the United States, and to be voted for as such candidate at the general election in November, 1896; that the respondents appointed judges and clerks of election; that the primary was held pursuant to the notice; that delegates to the convention called for the sixteenth of May were selected, and the convention was held as per the call and notice; that this convention nominated Charles E. Pearce as the republican candidate for Congress from the twelfth district; that his nomination was duly certified to the secretary of state as such nominee, and that the secretary accepted the certificate of nomination and caused the name of Pearce to be printed in the official ballot as the republican nominee of the twelfth district for congress. It is now a matter of public history that Pearce was voted for and elected at the general election following his nomination, qualified, entered into and now holds the office of representative in congress from said twelfth

district. On the nineteenth day of September, 1896, the appellants claiming to be the duly authorized executive committee of the republican party for the twelfth congressional district, held a meeting and ordered an election to be held on the fifth day of October, 1896, for the purpose of electing delegates to a convention to be held on October 6, 1896, to nominate a republican candidate for congress from the twelfth district, to be voted for at the ensuing general election. Notice of this action of appellants was duly served on the respondents and they were requested to give official notice of the election as called and to appoint judges and clerks to conduct the election. This the respondents refused to do whereupon the appellants applied to the circuit court for, and obtained an alternative writ of mandamus commanding the respondents to give the notice of the election and to appoint judges and clerks of the same as requested by the appellants, or to show cause. On the return day of the writ respondents filed their answer, to which a reply was filed by appellants and the following motion to quash by respondents:

"Now come said respondents, and respectfully move the court to enter judgment herein quashing the alternative writ and denying a peremptory writ herein, and assign the following grounds for this motion, to wit:

"1st. Because on the face of the pleadings it appears that these respondents had, and exercised a discretion vested in them by law, to decide and determine all questions arising with reference to the regularity or legality of any managing or controlling committee of any political party which shall request these respondents to hold a primary election for such political party, and these respondents, having acted upon said matter, the same is not now subject to review by the court.

"2d. Because on the face of the pleadings herein, it appears that as to who constituted the managing or controlling committee of the Republican party in and for the twelfth congressional district of Missouri, and its right, power and authority to request these respondents to hold a primary election for the selection of delegates to a convention to elect delegates to the National Republican Convention held in St. Louis in the year 1896, and to select an elector for said district and to nominate a candidate for the Republican party for congress from said district, and for the selection of a new Republican committee for said district, was after notice to the relators and those whom they claim to succeed and represent submitted to the National Republican Committee, and after a full hearing by said Committee, at which all of the contending and rival parties were represented, said Republican National Committee decided in favor of the delegates selected at the primaries held pursuant to the request of the Republican congressional committee of the twelfth congressional district of Missouri, of which said Pareira was chairman, and said Comfort was secretary, and said action of said National Committee was ratified by a majority of the committee on credentials, and subsequently by the National Convention of the Republican party held in St. Louis, June, 1896, and under these circumstances, after this matter had been finally heard and determined according to the customs and usages of the Republican party, by the highest power in that party, its decision is not subject to review or reversal by this court."

The motion to quash was sustained and judgment was rendered for respondents. After an unsuccessful motion for new trial appellants took an appeal.

In addition to the facts herein stated, the pleadings set forth at considerable length the rules and customs of the republican party in the election of its executive

committeemen. The appellants claim to have been selected in a regular way according to the practices of their party and that they were recognized by the controlling republican committee of this state as the duly constituted executive committee of the republican party for the twelfth congressional district. They state also in their answer in substance, that the Pareira committee were usurpers, had no authority to act for the republican party as its congressional committee for the twelfth district; that its action in calling a primary election was for the purpose of disrupting the republican party, and that the respondents were well acquainted with these facts when they received the notice of election for May 5 and well knew that the Pareira committee had no authority whatever to call a primary election in the twelfth district. These averments were put in issue by the reply. The respondents in their return set forth the political steps and acts taken by their party, by which they claim the right to exercise their powers and duties as the executive committee of their party for the twelfth district, and claim to have been recognized as the duly constituted committee of that district by the republican national committee, held in St. Louis, June 6, 1896. These facts were in effect denied by the answer of appellants.

The primary election laws require the board of election commissioners, when served with notice by the managing or controlling committee of a political party, to give notice, to be printed in the daily newspapers, of the time and places of holding such election, etc. (Laws of 1891, sec. 2, p. 136). The election commissioners acting under this law, were bound to determine for themselves which of these committees was the controlling one for the twelfth district before they could give notice of a primary election at the request of either. To determine which was the controlling com-

mittee it was necessary that they should (to use the language of Judge SHERWOOD in State ex rel. O'Malley v. Lesueur, 103 Mo. loc. cit. 253), "consider before acting and search and inquire before reaching or announcing a conclusion." The act therefore in giving the notice, etc., of election in this instance was not a mere ministerial one. A correct performance of this duty in this particular case required of them to make inquiry and to act with discretion, and if they performed this duty in this manner, acted honestly and faithfully, the act can not be controlled by mandamus. State v. Lesueur, 136 Mo. 452; State v. Oliver, 116 Mo. 188; State v. Hathaway, 115 Mo. 36; State v. Gregory, 83 Mo. 123; State v. Marshall, 82 Mo. 484; State v. Lesueur, 103 Mo. 253, and innumerable other cases in and out of this state. A willful abuse of discretion by refusing to act as required by law, in a case where the facts essential to relator's rights, "are undisputed or stand confessed by the pleadings," will be controlled by mandamus. St. Louis v. Lamp Mfg. Co., 139 Mo. 560; State ex rel. v. Pub. Schools, 134 Mo. 296; State ex rel. Hathaway v. The Board of Health, 103 Mo. 22; State ex rel. O'Malley v. Lesueur, 103 Mo. 253; State v. Lafayette Co. Ct., 41 Mo. 226; Ex parte Bradley, 7 Wall. 377; Glencoe v. People, 78 Ill. 389; Wood v. Strother, 76 Cal. 545; Railroad v. Stockton, 51 Cal. 339; People v. Superior Court, 10 Wend. 285; State v. Commissioners, 39 Ohio St. 188; Connolly v. Board of Freeholders, 57 N. J. L. 286; State v. Richards, 16 Mont. 145; Tapping on Mandamus, 14. The answer set up a state of facts which made it the duty of the election commissioners to refuse to act upon the request of the Pareira committee. The motion to quash like a demurrer admitted the allegations of the answer (State ex rel. Walnut St. R'y Co. v. Neville, 110 Mo. 345), it should therefore have been overruled and the

cause heard on the issues thereafter joined. For this error the judgment must be reversed. But the time is passed in which any relief can be afforded the appellants. A peremptory writ (the time for holding the general election having long since passed) would be wholly nugatory and its performance an impossibility. Courts will not order useless or impossible things to be performed. State v. Beloit, 91 Am. D. 474; People v. Supervisors, 12 Barb. 217; Woodberry v. Commissioners, 40 Mo. 304; State ex rel v. Rodman, 43 Mo. 256. It only remains therefore for us to reverse the judgment of the lower court. All concur. Judge BIGGS in the result only.